**FEHER (HARRISON), Plaintiff-Appellant, v. MOTOR EXPRESS, INC., Defendant-Appellee.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3050. Decided 1945

Peter B. Betras, Youngstown, for plaintiff-appellant.
Harrington, Huxley & Smith, Harry S. Manchester of Counsel, Youngstown, for defendant-appellee.

**OPINION**

By PHILLIPS, J.

Plaintiff appeals on questions of law from a judgment of the court of common pleas entered upon a jury verdict for defendant, an Ohio trucking corporation, in plaintiff's action to recover damages against defendant for personal injuries allegedly sustained as the result of its negligence.

Plaintiff charged defendant with negligence in the first

cause of action of her petition. In her second cause of action she incorporated the allegations of her first cause of action, and alleged that the acts of negligence charged in the first cause of action "were done wantonly in that the same were done in a manner and at a time and place and under circumstances that the said conduct of the defendant would in all probability cause injury to plaintiff and in disregard of the safety of others and the use of said highway and did so injure this plaintiff."

Defendant's motion to strike plaintiff's second cause of action from her petition was overruled on the ground "that the defendant's remedy is motion to make definite and certain."

Subsequently defendant filed such a motion and thereafter the trial judge sustained defendant's motion to strike plaintiff's second cause of action from her petition on the grounds that the facts constituting wanton misconduct must be pleaded specifically. Thereupon plaintiff filed her first amended petition in accordance with the ruling of the trial judge.

Plaintiff contends that the trial judge erred prejudicially to her in ordering the second cause of action in her petition stricken therefrom "and in not permitting the issue of wanton misconduct of the defendant-appellee submitted to the jury."

It is believed that the trial judge did not err prejudicially to plaintiff in sustaining defendant's motion to strike plaintiff's second cause of action from her petition or in not submitting the issue of defendant's wanton misconduct to the jury for the reasons stated hereinafter and others.

Under the circumstances of this case the motion can be treated as a demurrer. The amended petition supersedes the original petition. See **Bingham v The Nypano Railroad Company, 112 Oh St, 115.** In that case Marshall, Chief Justice, said:—

"The first claim of error is that the trial court erred in sustaining the demurrer to the original petition. This proposition can be easily disposed of. When that demurrer was sustained the plaintiff did not elect not to further plead and did not permit final judgment to be entered on that demurrer and prosecute error therefrom, but on the other hand elected to file an amended petition. Whether or not the original petition was obnoxious to a demurrer is not open to inquiry at this time. The amended petition susperseded the original petition and all further pleadings and proceedings in the case were addressed to the amended petition."

We believe this case can be distinguished from the case of **Cassidy, Appellant, v The Ohio Public Service Co., Appellee 74 Oh Ap, 355, 29 OO, 511.**

For the reasons stated hereinafter and at the risk of lengthening this opinion unreasonably the facts stated by counsel for the plaintiff in their brief with reference to the manner in which plaintiff was injured are lifted in their entirety from the brief of counsel for plaintiff submitted to this court. Those facts are as follows:

"Annette Feher (Harrison) is the plaintiff-appellant and at the time of the collision was unmarried. The accident happened on January 31, 1943, at about 5:00 A. M., on Ohio Route 18 at the entrance to the Isaly Dairy Farm, Mahoning County, Ohio.

"On Saturday, January 30, 1943, the plaintiff, due to the fact that the offices of her employer were being moved and that she wanted to report the day's happenings to the manager, she and the manager stayed at the office where she worked until around 12:00 midnight when the manager (Arsel G. Harrison) came in from out on business (R-10, 11, 12). The plaintiff was friendly with the manager and later married him but since the accident has instituted action for divorce. The manager and the plaintiff later came downtown and had a lunch at Clark's Restaurant (R-12) and the plaintiff was driven home by the manager at about 2:00 A. M., on Sunday, January 31, 1943 (R-13). The plaintiff found that her mother was getting worse and was sick of pneumonia and after some discussion she decided to go to Columbus, Ohio, and get a sister. The plaintiff called the manager (Harrison) up and got permission to use his 1942 Dodge Sedan which was parked in the Youngstown Garage near the Ohio Hotel at which hotel he was staying (R-13, 14, 15). The plaintiff intended to drive to Columbus, Ohio and bring her sister back to Youngstown, Ohio.

"The plaintiff then called a taxicab (R-15) and went to the garage, and after getting the auto drove west on Mahoning Avenue where she stopped at a garage and got some gasoline (R-16) and then started out Ohio Route 18 for Columbus, Ohio.

"The weather was cold and clear and visibility good and the plaintiff was alone in the auto (R-16-17). The plaintiff was familiar with the route to Columbus, Ohio, and had operated the same auto many times before. The lights were lit and would show the roadway up 300 feet ahead (R-17, 37,

39). Traffic was not heavy at the time and there was an occasional spot in the road that was slippery and some snow was along the side of the road (R-18). The roadway was clear and dry (R-19).

"When the plaintiff left North Jackson she noticed the lights on the defendant's equipment about 350 feet ahead, and from the lights showing she knew it was a truck (R-19). This trucking equipment, consisting of a White Tractor and Mobile trailer (R-177), had a miscellaneous load of 18,000 pounds (R-201). The plaintiff thought defendant's equipment was moving forward on the roadway and going west the same direction that she was traveling.

"The plaintiff was going about 25 to 30 miles per hour and blew her horn (R-20). When she was about 80 feet behind the truck she started edging over to the left side of the road (R-19) and had increased her speed to 30 or 35 miles per hour (R-43), and when she was about 30 feet behind the defendant, said truck and trailer was still completely on the right side of the road (R-45). Also when the plaintiff was about 35 or 40 feet behind said truck and trailer she was then completely over on her left side of road getting ready to pass (R-45) when the trailer part of defendant's equipment suddenly was swung around to the left side of roadway (R-45) and completely blocked the whole roadway (R-46). The plaintiff in this emergency tried to drive her car to the right and was unable to stop in time or to avoid colliding with the rear right part of the trailer. The plaintiff says she skidded three or four feet trying to stop suddenly (R-51). The tractor was still on the right side of the roadway (R-46) and the trailer was the only part of defendant's equipment which suddenly swung across the roadway and headed toward the Isaly Dairy Farm lane extending from the left side of Ohio Route 18.

"THERE WAS ABSOLUTELY NO WARNING OR SIGNALS (R-22) COMING FROM THE DEFENDANT'S OPERATOR OR THE EQUIPMENT INDICATING ANY INTENTION TO BACK UP AND SWING THIS LARGE EQUIPMENT SUDDENLY ACROSS A PUBLIC HIGHWAY IN THE NIGHT SEASON AND ON A ROADWAY THAT IS IN MUCH USE AND TRAFFIC CAN BE EXPECTED TO BE PASSING AT ANY MINUTE. THE TRACTOR AND TRAILER WAS ABOUT 34 FEET LONG AND THE TRAILER PART ABOUT 28 FEET LONG (R-213). THERE WERE NO FLARES OR TORCHES LIGHTED ON THE ROADWAY (R-23).

"The plaintiff was rendered unconscious 15 days and was confined to a hospital and her home because of serious in-

juries.    The defendant does not dispute the injuries and offered no testimony to the contrary.

"Donald Manypenny, a witness, called by the plaintiff, works at the Isaly Dairy Farm (R-57), and was just getting up to start his Sunday chores (R-58, 62), when he heard the crash and looked out the window and saw that a collision had happened at the end of the Isaly Dairy Farm lane and that a truck had backed across the road and it had lights on (R-58, 61), and that he did not go to the scene but noticed the vehicles still there as he crossed the field within one fourth mile away on his way to work at the Isaly Dairy Farm (R-60, 62), and that the accident was about 5:00 A. M. Sunday morning, last of January, 1943 (R-61, 62, 63).

"Mary Manypenny, the wife of aforementioned Donald Manypenny, also testified, and said upon looking out she saw a collision had taken place at the Isaly Dairy Farm lane and the truck was backed into the Isaly Dairy Farm lane (R-68-72). This witness did not go to the scene of the accident (R-69) and says she can see the Isaly Dairy Farm lane from her window (R-72) and that she could tell it was a truck involved in the collision from lights of other autos approaching the scene (R-73).

"The defendant's operator said he left Pittsburgh, Pennsylvania, at 5:45 P. M., on Saturday, January 30, 1943, and had a load of 18,000 pounds to go straight through to Sandusky, Ohio, though he was only taking the shipment as far as Elyria, Ohio (R-201), and that he did not expect to make any stops.    This operator's name was Shank and he says he started to have tractor trouble before reaching East Palestine, Ohio, and because his original tractor went 'haywire,' was held over at East Palestine until 11:30 P. M. the same night until he got another tractor from Pittsburgh (R-202). The defendant's operator says he then started out again, and reached North Jackson about 1:45 A. M. on Sunday morning, January 31, 1943, according to a clock he noticed at a gas station (R-177). He was alone in his equipment and said he had passed the railroad tracks at this place.    At about this time the second tractor which he had on this trip started to sputter (R-177) and finally quit and would not run (R-179) and that this was a little after 1:45 A. M. (R-180).

"The defendant's operator then says he got out of the equipment and put a lighted pot torch about 100 feet to rear of the equipment, one near the back of the equipment and one in front of the equipment down the road (R-182). He also says he lighted a 30 minute fusee when he first stopped (R-181). The operator then claims the road was dry at 2:00

A. M. (R-224), but that it later got icy and slippery from dew (R-224).

"The defendant's operator claims that at about the time he first got stopped another truck driver of the company he worked for came along going in the opposite direction towards Youngstown, and he requested this employee to report him down (R-182). This employee was named Palm, and Palm testified that he noticed the lights of the other company equipment flickering (R-107), and that he stopped but did not get out (R-109), and also that he forgot to report the supposedly broken-down equipment of his company when he got to Warren, Ohio, where he was going and that he did not report it until he later made a trip to Youngstown and back to Warren, Ohio, when he remembered about reporting it and which he thinks was two hours after and he then reported this truck down to the dispatcher at Youngstown, Ohio (R-109).

"Shank, the claimed stalled operator, says other truck drivers of the same company he worked for came along, one was Sam Sinagaro, a witness, who stayed two minutes (R-122), another was Max Parr, also a witness (R-134), who stayed about ten minutes and found he could do nothing and went on (R-136). He made no request of these men to report him down (R-185, 186).

"The defendant's operator then says that during the time after he first stopped at 1:45 A. M., until the time of the collision which he says was about 4:30 A. M., he walked about the roadway to keep warm (R-187), and that he noticed the electric high tension wires in front of him (R-196) all night at the place where the trucking equipment was stopped (R-212), and which wires show in defendant's Exhibit 6. This defendant's operator denied that there was any lane opposite to where he claimed the accident happened (R-219), but tried to say it was one-half mile away; that there was a lane at the place where the high tension wires cross is not disputed otherwise, and it was pointed out to the jury at the time of their trip to Ohio Route 18. It was also testified to that there is a lane by the high tension wires (R-230). The defendant's operator said he never attempted to contact anyone in a house nearby (R-220) and never went to the Isaly Dairy Farm (R-221). The defendant's operator also says that the first he knew about the accident or presence of the plaintiff was when he felt the collision. (R-188, 189). The plaintiff claims the accident happened on the black and narrower part of the highway in front of the Isaly Dairy Farm lane, and the defendant claims it happened on the right side of the cement highway about one-half mile away towards Youngstown, Ohio,

at a place where high tension wires for electricity cross Ohio Route 18. The highway changes from cement to tar and gravel construction near the Isaly Dairy Farm at a place called Bailey's Corners. There is a distance of about one-half mile from the high tension wires to the Isaly Dairy Farm lane (R-152).

"After the collision a State Highway Patrolman (Meyer) came from his home at Warren, Ohio (R-145), to the scene of the accident at about the time an ambulance from Canfield, Ohio, arrived (R-149). This patrolman said he found a damaged unlighted pot torch 119 feet back of trailer (R-151), a lighted pot torch 50 feet back of trailer, and one along side of trailer (R-151). This is different than testified to by the defendant's employee. The operator claims three pot torches were lit and he says he relighted the one that was 100 feet back which the plaintiff is supposed to have run over. With the pot placed in front of the equipment and the State Highway Patrolman having three in back, this would make four pot torches at the scene of the accident. The truck driver does not even claim this. The operator says he was told by the State Highway Patrolman to place a pot torch 50 feet back (R-195). The Highway Patrolman does not remember for certain whether there were lights burning on the Dodge Sedan (R-159) but to the best of his recollection says they were not burning when he arrived and bases this conclusion on the fact that the truck driver should or would have turned them off to prevent a fire if they were lit (R-160). The Highway Patrolman's deposition was taken before the trial and the defendant's truck driver does not say there were lights on the Dodge Sedan before the collision though he does not very convincingly say they were not (R-188). The plaintiff says lights on her automobile were lit before the accident (R-39, 37, 17), and of course did not testify about after the accident because she was rendered unconscious.

"The Patrolman said he measured marks in the road that showed a distance of 161 feet to the place of collision (R-151). This officer at the time his deposition was taken had been transferred to the Dayton, Ohio, district, and says that he also investigated an accident at the entrance to the Isaly Dairy Farm (R-152, 153), and it appears he has got the accident locations mixed up which can be very easily done. The State Highway Patrolman believes the accident happened on the cement part of the highway at the high tension wires (R-152, 155).

"The defendant's operator says that a company mechanic came to the scene of the accident and put on a new fuel pump

and also a booster on the battery for his truck. The State Highway Patrolman testified that after the company mechanic examined the truck he overheard the mechanic tell this operator that he did not have sense enough to turn the other gas tank on after the one he was using went dry. The State Highway Patrolman does not testify as to anything being done to the trucking equipment in the way of a fuel pump or booster for the battery, and this Highway Patrolman would naturally be interested in why a truck was involved in a collision in which the injured plaintiff may have been injured severely enough to eventually die from her injuries (R-175).

"THAT THE DEFENDANT'S TRUCK DRIVER WAS AWARE OF THE DANGER IN BACKING UP AND CROSSING THE ROADWAY WITH THE TRUCKING EQUIPMENT ON THIS ROAD IS FOUND IN HIS EMPHATIC ANSWER THAT 'IT IS IMPOSSIBLE' THAT HE WOULD BE BACKING UP AND CROSSING THE ROADWAY (R-198) AND THAT HE WOULD HAVE MORE SENSE, AND THAT HE NEVER BACKS UP ON A HIGHWAY (R-222, 223)."

Plaintiff contends that the trial judge erred prejudicially to her in the admission of evidence offered by defendant and the rejection of evidence offered by her, to which admission and rejection she duly objected.

The record in this case contains 280 pages and counsel for plaintiff has assigned fifteen grounds of error upon which they rely to secure a reversal of the judgment of the trial court, most of which have been briefed at great length and argued orally, and disposition of all of which will be made in this opinion.

Counsel for plaintiff have not called our attention by brief to, and my notes taken upon hearing of plaintiff's appeal fails to reveal, specific instances where testimony or evidence was admitted or rejected which prejudiced the rights of plaintiff.

I assume that counsel for plaintiff has abandoned these assigned grounds of error and the lengthy record will not be reread with a view to discovering the admission or rejection of testimony or evidence even though claimed prejudicial to plaintiff by assignment of error.

Counsel for plaintiff claims that the trial judge erred "in refusing to charge the jury before argument the plaintiff-appellant's written instruction marked number five pertaining to the assured clear distance ahead law," and again "after argument."

The record reveals that upon hearing of plaintiff's mo-

tion for a new trial the question was raised "as to whether request number five on the assured clear distance ahead had been submitted and refused before argument;" that plaintiff's motion for a new trial was overruled; that upon rehearing of such motion the trial judge heard evidence of counsel for plaintiff and admitted in evidence affidavits of each of plaintiff's counsel that it had been submitted and refused and testimony of each of defendant's counsel that it had been submitted, withdrawn, and had not been refused; that the "personal docket" of the trial judge showed that he took the original motion for new trial under advisement; that upon rehearing he said "now I remember the discussion before argument as to the six requests to charge which took place at the bench out of hearing of the jury and the stenographer. I remember instructing the stenographer to give exceptions to the defendant in reference to my giving the four charges that I did give, but I do not remember having refused to give request to charge number five or for that matter number six;" that his recollection was that the notes of the court reporter indicated that he gave "four written requests and did not decline to give any;" that he said "I will put it this way; the notes show I gave four written requests and the notes are entirely silent as to anything else;" that "while the stenographer's notes do not definitely indicate it, it is the court's recollection that plaintiff's request to charge number five was submitted to the court before argument and withdrawn by plaintiff;" that the court did not refuse to give any such request to charge before argument to the jury; that "after the general charge to the jury plaintiff resubmitted request to charge number five to the court, and that the court then refused to give such charge for the reason that he had given the same in substance in his general charge."

The bill of exceptions submitted to this court for review was certified by the "official shorthand reporter" as being a true and correct transcript of all evidence introduced and proceedings had in the trial, including the general charge of the trial court, and on hearing on plaintiff's motion for new trial. That bill of exceptions was allowed by the trial court. This court is bound by that bill of exceptions in this appeal, and as a result of careful review thereof with reference to the assignment of error under discussion and careful perusal of the general charge of the trial court in its entirety can not say that plaintiff was prejudiced as claimed by plaintiff in assignments of error numbered five and twelve.

It is observed that at the time the trial judge submitted four special requests to charge to the jury that counsel for

522

plaintiff did not except to the claimed refusal of the trial judge to charge claimed submitted request to charge number five.

Now it is claimed by the plaintiff that in his general charge to the jury the trial judge used the words "burden of proof" sixteen times, which it contends was excessive and "resulted in prejudice to the plaintiff."

Reference to the general charge reveals that the trial judge used the words "burden of proof" in his charge first by saying: "There is another thing I want to say in connection with this issue or controversy of the defendant's negligence and it has to do with the expression burden of proof." That he defined burden of proof to the jury by saying: "Now I must tell you what I mean by the expression burden of proof. It will appear a number of places in this charge. The burden of proof means the burden of establishing something by the greater weight of the probabilities." That later in his charge he said: "I have already explained what I mean by burden of proof." It must be apparent that the use of the words "burden" and "burden of proof" thus far in the general charge were not prejudicial to either party.

However reading the general charge further it is observed that the trial judge used the word "burden" twice and the words "burden of proof" eight times in charging the jury on the issue of defendant's negligence, and the word "burden" once and the words "burden of proof" seven times in charging the jury on the issue of plaintiff's contributory negligence.

Counsel for plaintiff say by brief and this court is familiar with the fact that "there are cases that hold it to be sufficient to refer to plaintiff's burden of proof in one place." Of course it is advisable not to repeat legal propositions in a charge if it is possible to avoid doing so, and unquestioned that undue repetition thereof under certain conditions constitutes reversible error.

"As a general principle, also, the trial court should avoid giving instructions which are, to an unreasonable degree, repetitions of the same legal propositions given in other parts of its charge, especially where the result would be to give undue prominence to the propositions repeated. In other words, when a proposition has once been clearly given, the court ought not to repeat it in varied form of expression, though equally correct; and if the charge as already given is commendably short, it is more essential that no particular statement as to fact or law should be unduly emphasized by repetition." 39 O. Jur., Sec 256, P 935.

See also: **National Life & Accident Ins. Co., v. Kelly, 42 Oh Ap, 255, 182 N. E. 46; The American Steel Packing Company v Conkle, 86 Oh St, 117, 99 N. E. 89; Uncapher v The Baltimore & Ohio Rd. Co., 127 Oh St, 351, 188 N. E. 553; Jacquemin v Bunker, 15 Oh Ap, 491.**

In the unreported case of Sylvia Walters v Eastern Ohio Transport Corporation, Belmont County Appeals No. 715, "defendant claimed that the trial court unduly stressed the degree of care required by charging 'highest degree of care' a total of fourteen times in the charge." In that case "in addition to reiteration of the charge of 'highest degree of care,' as complained of in the general charge, the trial court gave a series of special requests covering the proposition charged in the general charge.

"It is prejudicial error to give instructions which to an unreasonable degree contain repetitions of the same legal proposition and thereby give it undue prominence; or to give a series of special requests every proposition of which has already been covered by the general charge, which, although they state abstract principles of law correctly, are so worded as to emphasize to the jury a feature of the case tending against the adverse party." 2 **O. Jur., Section 769 Page 937.**

"Similarly, the repetition in the course of the general charge of an instruction previously given at the request of a party, is not necessarily erroneous provided it is done without any comment or enlargement upon it. But it may be regarded as prejudicial if the effect is to give it undue importance * * *." 2 **O. Jur., Section 769, Page 938.**

See also **Cincinnati Traction Co. v Nellis, 81 Oh St, 535,** 91 N. E. 1025.

In the unreported case of Sylvia Walters v Eastern Ohio Transport Company, supra, this court said:

"Taken in consideration with the voir dire examination from which the jury understood that the real defendant was an insurance company situated in Virginia, it seems likely that this case is one in which the sympathies of the jurors are naturally with the party favored by the repetitions in the charge. In the special instructions given to the jury in writing before argument, the jury was instructed some five times as to the degree of care required of the defendant. In this situation it seems apparent that further instruction upon the same subject fourteen times in the general charge was unreasonable and prejudicial instruction."

" * * * We have equally carefully considered the special requests to charge before argument given by the court and, considering them as a whole, have concluded that the trial judge committed prejudicial error in the respects considered in this assignment of error."

In the unreported case of William Harold Johnson v Eastern Ohio Transport Corporation, Belmont Appeals No. 767, the court in his general charge clearly charged the jury on the issue of plaintiff's contributory negligence. "Upon conclusion of the general charge and after 'conference of the court and counsel', the nature of which was not disclosed by the record, the trial judge further charged the jury as follows:

"You are further charged that if the plaintiff looked to the east along Route 147 ahead of the car in which he was riding immediately before entering the intersection in question and did not see the approaching bus, if said bus was then plainly visible from his position, and you further find that plaintiff could have warned the driver of the approach of the bus and thus prevented the collision but failed to do so, you would then be warranted in finding plaintiff guilty of contributory negligence."

"Plaintiff objected to the quoted charge and contends that: .
" 'After the jury were fully and completely charged and after the case was practically placed in their hands and instructed as to how to fill out their verdict, for the Court to again charge on the contributory negligence even if the charge were correct put too great an emphasis on that phase of the case and lead the jury to believe that the court wanted them to particularly look into the question of contributory negligence and to believe that the court felt that there was a serious question at least as to whether plaintiff was guilty of contributory negligence.' "

In passing upon the contention this court said:

"The correctness of the charge as submitted is questionable. However, assuming, but not determining that the above quoted portion of the charge is correct, the conclusion is reached that the submission of it to the jury unnecessarily emphasized the issue of plaintiff's contributory negligence, and constituted prejudicial and reversible error."

This court cited as authority 39 O. Jur. Sec. 256 p 935, and reversed the judgment of the trial court.

In the case of Hazel M. Grimm v Board of County Commissioners, Jefferson County Appeals No. 942, the general charge of the trial judge was challenged for prejudicial repetition, and this court said:

"It is further urged that the court erred in its general charge to the jury in that the court gave undue prominence to the issue of contributory negligence unnecessarily repeating this claim of defendant, and that in so doing prejudice resulted. Unnecessary repetitions in a charge are to be condemned, and many of the reviewing courts have granted reversals and ordered new trials by reason of repetitions of particular issues involved for the reason that such repetitions give undue prominence to some particular issue, thereby making such reversible error. This court so held in a recent case in Belmont County, being the case of Sylvia Walters v Eastern Ohio Transport Corporation."

"We have read and reread the charge of the court with this urged error in view, and do find some repetitions which probably could be eliminated. However we find a number of repetitions emphasizing the liability of defendant under the allegations of negligence alleged in plaintiff's amended petition. We therefore hold that under these circumstances this claimed error cannot be sustained."

In dealing with repetitions in a charge this court said in the unreported case of Edward L. Yager, as Receiver of Wheeling Traction Company, a corporation, v Lucy Marshall, Belmont Appeals No. 634, later reversed by the supreme court on another ground:

"The charge of the Court was unnecessarily long and indulged in needless and unnecssary repetitions. However, it is believed that such repetitions operated in favor of rather than against defendant, yet we believe the charge as a whole presents a very fair analysis of the issues and a correct statement of the aw as it obtains in Ohio."

It is apparent that the cases of Walters and Johnson, supra, are distinguishable from the case at bar. Even though

there might be some repetitions in this case which properly could be eliminated, yet it is obvious that those repetitions are used approximately the same number of times with reference to defendant's negligence as with reference to plaintiff's contributory negligence. Therefore we hold as we did in the case of Grimm v Board of County Commissioners of Jefferson County, supra, "that under these circumstances this claimed error can be sustained."

We find no error prejudicial to plaintiff in the remainder of the charge which disposes of plaintiff's contention as set forth in her eleventh assigned ground of error that "said court erred in his charge to the jury on the trial of said action." .

During deliberation shortly before noon recess the jury. asked the trial judge in a written note: "Judge Ford: If we find negligence on both sides could we return a verdict?"

The record discloses that the jury "was called into court about 12:00 noon." Inquiry was made by the trial judge as to whether it sent the note and he was advised in the affirmative. The trial judge had the foreman identify the note and said to the jury "I want to give the question of answering the note a little reflection and so I am going to let you go to your lunches;" cautioned it to "not deliberate upon the case unless you are all together in your jury room and to refrain from doing so while you are on your lunch hour," and instructed it to return to the jury room after lunch.

· After the luncheon recess the trial judge said to the jury: "I received the following note from the jury, "Judge Ford, if we find negligence on both sides could we return a verdict?" He briefly reviewed his action before lunch and said to the jury that he construed such note "to be substantially equivalent to your having asked my bailiff to bring you into court so I could so instruct you," and referred to "the statute regarding a situation like this." That he said to the jury: "Now I turn to answer your question, the note is as follows: If we find negligence on both sides could we return a verdict?" After giving to the jury further instructions he said to it "you say in the note, if we find negligence on both sides, I understand this language I have just read, if we find negligence on both sides, if the jury finds that both the plaintiff and the defendant through its truck driver were negligent. The conclusion is 'could we return a verdict'. Here is my instruction," which we deem unnecessary to state here.

Now counsel for plaintiff contends that the trial judge

committed "prejudicial repetition resulting in undue emphasis in regards to the note."

We have read, carefully reread and painstakingly studied the record with reference to this assigned ground of error, and we can not arrive at the conclusion reached by counsel for plaintiff that the trial judge erred to plaintiff's prejudice in the respects charged in this assigned ground of error.

The record in this case has been read and the evidence contained therein is decidedly and unusually conflicting and contradictory. Unfortunately counsel for plaintiff has not stated the facts accurately in their brief. However, assuming the facts as stated in plaintiff's brief, which have been set forth verbatim in the factual statement of this opinion, are correct, surely counsel for plaintiff can not be sincere in urging, and upon the record submitted to us we cannot hold, that the judgment of the court of common pleas should be reversed for the reasons assigned in two grounds of error that as shown by the record "the verdict of the jury was given under the influence of passion and prejudice," and "is against the manifest weight of the evidence."

It follows from what we have said that the verdict of the jury and judgment of the trial court entered thereon were not returned and entered "for the Motor Express, Inc.," defendant-appellee herein, when it (they) ought to have been given for said plaintiff-appellant, that the verdict of the jury is not "contrary to law"; and that the court did not err prejudicially to plaintiff in overruling the motion of the plaintiff-appellant for a new trial.

Counsel for plaintiff has not called our attention to "other prejudicial error towards the plaintiff-appellant manifested on the face of the record." We do not pass upon that assigned ground of error.

The two issue rule was mentioned in oral argument but not raised by assignment of error or argued by brief. For those reasons and others that must be apparent from a reading of this lengthy opinion we do not discuss the operation of that rule in this case.

Now just a concluding word. "As shown by the record of the proceedings and judgment under review" we are of opinion that "substantial justice has been done" between the parties in this case. See §11364, GC.

The judgment of the court of common pleas is affirmed.

NICHOLS, P. J., & CARTER, J., concur in judgment.