OPINION
Lamonte L. Chambers, defendant-appellant, appeals the October 26, 1999 judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of aggravated burglary, violations of R.C. 2911.11, first degree felonies; kidnapping, in violation of R.C. 2905.01, a first degree felony; two counts of domestic violence, violations of R.C. 2919.25, fifth degree felonies; and felonious assault, in violation of R.C. 2903.11, a second degree felony.
On April 17, 1999, Pamela Day, appellant's mother, was sleeping in her home when she heard a knock at the door. She opened the door slightly and saw appellant and his friend Dion. Appellant asked his mother if he could stay there for a while. Ms. Day testified that she told him he could not stay because he was intoxicated, but she told him to call her later. She stated that appellant then pushed open the door and entered the house. Appellant had recently loaned his mother money and could not understand why she would not let him stay at the house.
Ms. Day testified that appellant hit her, causing her to fall down. Appellant then kicked her while she was lying on the ground. She stated that appellant started choking her and threw a piece of furniture at her. Appellant continued to hit and kick her and throw furniture around the room. Appellant left the house, but as Ms. Day attempted to lock the door, appellant re-entered the house and continued to hit and kick her. She testified that after going numb, she realized that appellant was pulling her through the front yard by her hair. Ms. Day eventually walked to a neighbor's house where the neighbor called the police. Ms. Day was hospitalized for one day and suffered a sprained neck, three broken ribs, a fractured jaw, and a fractured cheekbone and had to have stitches on her legs.
Appellant was indicted on three counts of aggravated burglary, three counts of kidnapping, three counts of domestic violence, and one count of felonious assault. On September 29, 1999, appellant was tried before a jury. The court, with agreement of the prosecution, dismissed two counts of kidnapping, one count of aggravated burglary, and one count of domestic violence. The jury found appellant guilty on the remaining counts.
On October 13, 1999, a sentencing hearing was held. On October 26, 1999, the trial court entered its judgment sentencing appellant to ten years imprisonment for the kidnapping count and the two aggravated burglary counts, to run concurrently with each other. The court also sentenced appellant to eight years imprisonment on the felonious assault count, to run consecutively with the sentence on the aggravated burglary and kidnapping counts. The two remaining domestic violence counts were merged with the felonious assault counts for the purposes of sentencing. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 I. THE TRIAL COURT ERRED WHEN IT FORCIBLY EXCLUDED DEFENDANT-APPELLANT FROM THE COURTROOM DURING PART OF HIS TRIAL.
 II. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT-APPELLANT'S MOTIONS FOR A MISTRIAL WHEN DEFENDANT-APPELLANT MADE INSULTS TO THE JURY AND POUNDED ON THE COUNSEL TABLE.
 III. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S CHALLENGE TO THE STATE'S USE OF A PEREMPTORY CHALLENGE TO EXCLUDE A PROSPECTIVE JUROR BECAUSE OF HER RACE.
Appellant argues in his first assignment of error that the trial court erred when it excluded appellant from the courtroom during part of his trial. The trial court excluded appellant from the courtroom during the trial due to several incidents. The following is the first disruptive incident, which took place immediately before the prospective jurors entered the courtroom for jury selection:
 THE DEFENDANT: I don't want him. I ain't got a choice. I'm going to let him do it anyway. You won't appoint me another.
 Let's pick them. Let's roll. They all some dirty mother f***ers. I'm laying low.
 THE COURT: If you have any language like that when the jury is in here, I'll have you sit in the jail while the trial is going on. You can't use cuss words in here. You have to keep your voice down. Also, make sure the jurors can't hear you communicating with your attorney.
 THE DEFENDANT: I'll stand up for God when he comes in.
After this exchange, the judge summoned the prospective jurors to the courtroom, whereupon, the following exchange took place:
THE DEFENDANT: Some dirty mother f***ers, boy.
THE COURT: All right. Take him out.
 THE DEFENDANT: Oh, whole f***ing jury white. Come on now. All the jurors are white.
After appellant was taken to a holding cell adjoining the courtroom, the judge stated to appellant's counsel:
 THE COURT: What I want you to do, I want you to go back there and tell him that if he can keep his mouth quiet and not cuss, I'll let him out. I'll let him out and I'll give him another opportunity. So you go back in there and tell him that. If he says yes, I'll let him.
Appellant then re-entered the courtroom, and the court began to explain the jury selection process. After the jury was empanelled and appellant's counsel had nearly concluded cross-examination of the state's first witness, Ms. Day, the record reveals the following took place:
 MR. JELLEN: Your Honor, may I have a minute to consult with my client?
THE COURT: Sure.
 Thereupon, defendant pounded fist on table; subdued by deputies.
The trial court then instructed the jurors to leave the courtroom and then explained what had taken place:
 THE COURT: What I would like to do is try to let the record reflect exactly what happened.
 Mr. Jellen was inquiring of his client, I assume — and I don't want to breach any client relations — but I assume to ask his client if there's any more questions that he wanted to ask of his mother. And I assume it was something along those lines.
MR. JELLEN: Yes, that's correct.
 THE COURT: Defendant flipped out, pounded the table, jumped up. Deputies, two of them, had to restrain him. That didn't work very well. They had to fight him to take him down at defense table.
 I think at that point in time there were four deputies here and the deputy hit his head on the table and injured the deputy. And the defendant continued to fight until it took four people to restrain him and handcuff him.
 The jurors were all present while this was going on. And even though I told them to leave, they were still here during 90 percent of it.
 Mr. Jellen has advised me that he has some serious concerns that he might be — I think he used the term psychopath.
MR. JELLEN: Sociopath.
 THE COURT: * * * But you have some concerns for your own safety.
 MR. JELLEN: Yeah. I've had some concerns for my own safety.
 THE COURT: So it's my belief that the defendant cannot be safely put in the courtroom without leg irons and handcuffs. And quite frankly, with the way he has shown how he's handling himself and talking to the jurors, swearing at them, the likelihood is he's not safe to be in the courtroom at all.
 So it's my gut reaction at this point, we adjourn for the day.
The trial court called the jurors back into the courtroom, told them to disregard what they had witnessed and not to let it affect their deliberations, and then released them.
Before the trial began the next day, the trial court explained the following to appellant:
 THE COURT: I'm going to explain what I'm going to do. I'm going to keep you in that holding cell right there so you can listen what's going on. You're going to be able to hear virtually everything else. I tried to get sound equipment. We couldn't find anything. If you stay quiet in there and try to listen, that's fine. If you're noisy, I'm going to close the door and take you out of here.
 THE DEFENDANT: So he going to defend me without being present? So like he going to defend me without being present?
THE COURT: That's right.
 THE DEFENDANT: I don't even trust him already so that's making it worse on my part. I hope this is on record that I didn't want him to defend me from the get go. You left me no choice. That's a crash dummy move. The court don't defend anybody themselves.
 THE COURT: I gave you the opportunity. I told you to keep your mouth closed and not swear in front of the jury. The jury came out and you said "f**k" about three times in front of the jury.
THE DEFENDANT: One time.
THE COURT: Well, I heard it twice.
THE DEFENDANT: You heard it twice.
 THE COURT: Now, I put you back in there and I said if you're good, I'd let you out. I let you out. Immediately you created a great commotion. You got a police officer hurt.
 THE DEFENDANT: I didn't get him hurt. It was his fault. He was trying to restrain me and he hit his head on the table. I never pushed that.
 THE COURT: If you hadn't caused any problems, he wouldn't have got hurt. I'm going to keep you back in the cell. I can't trust you back here.
The United States Supreme Court has stated that one of the most basic rights preserved by the Confrontation Clause is a defendant's correlative right to be present in the courtroom at every stage of the trial. Illinois v. Allen (1970), 397 U.S. 337,90 S.Ct. 1057. Presence is also required by Section 10, Article I, Ohio Constitution and Crim.R. 43(A). See State v. Walker (1959),108 Ohio App. 333. Appellant's presence is mandated unless he waived his right or there existed extraordinary circumstances requiring sequestration, such as misconduct. State v. Williams
(1983), 6 Ohio St.3d 281, 286.
A defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Allen, at 343, 1060-1061. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.
Further, a judge is at all times during the sessions of the court, empowered to maintain decorum and enforce reasonable rules to insure the orderly and judicious disposition of the court's business. State v. Clifford (1954), 162 Ohio St. 370, 372. The United States Supreme Court has stated "[w]e believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations."Allen, at 343, 1061. The court indicated that in the case of particularly obstreperous defendants, it is permissible for the court to: (1) bind and gag the defendant; (2) cite the defendant for contempt; or (3) remove the defendant from the courtroom. Id.
at 343-344, 1061. In addition, the exclusion of a defendant should be considered in light of the whole record. United States v.Gagnon (1985), 470 U.S. 522, 526.
In the present case, appellant's conduct was disruptive. The trial judge used his power to maintain order and decorum in the courtroom. He attempted to warn appellant after the first outburst, outside the presence of the jury. However, appellant chose not to heed such warnings, and again swore twice, this time in the presence of the jury. After placing appellant in the holding cell, the trial judge gave appellant another chance to conduct himself properly and warned him about his conduct in the courtroom. Again, appellant caused a considerable disruption, forcing police officers to wrestle with him and restrain him. Appellant's counsel also made statements to the court expressing his concern for his safety due to appellant's behavior. Therefore, we find the trial court had sufficient cause to require appellant to stay in the holding cell.
We also note that the trial court gave the jurors two cautionary admonitions telling them to disregard any action on appellant's part, as such was unrelated to the facts of the present case. One warning was given immediately after the incident, and the court also gave an admonition in the jury instruction. Further, the trial judge placed appellant in a holding cell that adjoined the courtroom with the door open, thereby allowing appellant to hear the testimony and evidence. Appellant also was permitted to testify on his own behalf. There is nothing in the record indicating that appellant was prejudiced. Under the circumstances, we cannot say that the trial court abused its discretion. Accordingly, appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the trial court erred in failing to grant his motion for a mistrial after he made insults to the jury and pounded on the counsel table. Appellant asserts the jury was prejudiced by: (1) his swearing when the jury came out and his stating that they were all white; and (2) his pounding on the table and then being wrestled and taken to the holding cell by police officers. Appellant's counsel moved for a mistrial after both incidents.
The decision to grant or deny a motion for mistrial rests within the sound discretion of the trial court. State v.Sage (1987), 31 Ohio St.3d 173, 182. This is because the trial court is in the best position to determine whether a mistrial is needed. State v. Glover (1988), 35 Ohio St.3d 18, 19. In order to demonstrate that a trial court has abused its discretion in denying a motion for a mistrial, a defendant must show that the trial court's decision was arbitrary, unreasonable, or unconscionable. State v. Nichols (1993), 85 Ohio App.3d 65, 69. A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused are adversely affected. Id. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991), 62 Ohio St.3d 118,127.
Appellant seeks to take advantage of an error, which he himself induced. It is well established that a court will not permit a party to take advantage of such "invited error." Under the invited error doctrine, a party may not take advantage of an alleged error that the party induced or invited the trial court to make. State ex rel. Fowler v. Smith (1994), 68 Ohio St.3d 357,359; Rhodes v. Rhodes Industries, Inc. (1991), 71 Ohio App.3d 797,806. "[A] litigant cannot be permitted, either intentionally or unintententionally to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible." Lester v.Leuck (1943), 142 Ohio St. 91, 93. Further, courts have been reluctant to consider the disruptive conduct of a defendant to be a proper ground for a mistrial. See State v. James (Feb. 19, 1999), Clark App. No. 98-CA-54, unreported (outburst by defendant during voir dire insufficient to declare mistrial); State v.Gonzalez (Nov. 18, 1998), Athens App. No. 97CA52, unreported (outbursts and interruptions, made both in and out of jury's presence, insufficient to declare mistrial). "To hold that the disruptive conduct of a defendant is a proper ground for a mistrial, it has been said, would provide a criminal defendant with a convenient device for provoking a mistrial whenever he chose to do so." James, supra, citing cases at Annotation, Disruptive Conduct of Accused (1979), 89 A.L.R.3d 960 (in presence of jury as ground for mistrial or discharge of jury). In the present case, appellant cannot participate in numerous, intentional, disruptive acts and then seek the protection of the court from his own misbehavior. Further, we note that the trial court twice admonished the jury to disregard the behavior of appellant and not allow it to affect their deliberations on the present case. A jury is presumed to follow instructions of the court and to obey curative instructions. State v. Loza (1994),71 Ohio St.3d 61, 79; Franklin, supra, at 127. Therefore, appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error that the trial court erred when it denied his challenge to the state's use of a peremptory challenge to exclude a prospective juror because of race. Appellant asserts that the prosecution unconstitutionally exercised its peremptory challenges to eliminate an African-American juror on the basis of race in violation of Batson v. Kentucky (1986), 476 U.S. 79,106 S.Ct. 1712. Under Batson, the state may not use its peremptory challenges, during the jury selection process, to exclude a member of the venire solely on the basis of race or gender. To establish a prima facie case of purposeful discrimination, a defendant must establish: "(1) that members of a cognizable racial group were peremptorily challenged, and (2) that the facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race." State v. Raglin (1998) 83 Ohio St.3d 253, 265, citing Statev. Hill (1995), 73 Ohio St.3d 433. If the prima facie case is shown, the burden then shifts to the prosecution to articulate a race-neutral explanation for the challenge. Id. If such race-neutral reasons are offered, the burden shifts back to the defendant to establish that the reasons advanced by the prosecution are pretextual. State v. Hernandez (1992), 63 Ohio St.3d 577,582. A race-neutral explanation offered by the prosecution need not rise to the level of a challenge for cause. State v. Cook (1992),65 Ohio St.3d 516.
Based on the record before us, we find nothing to support an inference that the state improperly used its peremptory challenges to exclude the juror based solely on race. The record reflects that the state expressed to the court that it excused the first African-American juror because she answered questions, by attorneys for both the state and appellant, that she would require the state to prove appellant guilty beyond "any" doubt. The state was concerned about the prospective juror placing an impermissibly high burden of proof on the state. The trial court agreed that the prospective juror did make such statements and that it was not sure whether the prospective juror was confused. The court then found that the state had shown an articulable reason for the challenge, and it overruled the Batson challenge. The trial court is in a far better position than an appellate court to determine whether the reasons asserted by the prosecutor are based on causes other than racial discrimination. Hernandez v. New York (1991),500 U.S. 352, 111 S.Ct. 1859, 1869.
In State v. Powers (1993), 92 Ohio App.3d 400, the state used a peremptory challenge to excuse a prospective juror based upon the juror's difficulty in understanding the legal concepts of burden of proof and proof beyond a reasonable doubt. The defense counsel raised a challenge pursuant to Batson, claiming the state's challenge was based upon race, which the trial court overruled. We affirmed the trial court and found that responses in voir dire that reflect an inability to comprehend basic legal concepts, which in turn hinders the ability to weigh the merits of the case independent from the conclusions reached by other jurors, form a sufficient basis to exclude a prospective juror on a peremptory challenge. Likewise, in the present case, we agree that the defendant has failed to establish the state's improper use of a peremptory challenge based on race. The state gave a sufficient race-neutral explanation for the challenge for it was concerned that the prospective juror would be unable to use the proper burden of proof. The record also does not suggest that the challenge was pretextual. Appellant's third assignment of error is overruled.
We also note that counsel for appellant raised at oral argument that he wished to also contest the jury's decision based upon insufficiency of the evidence. However, an issue raised during oral argument for the first time and not assigned as error in the appellate brief is, generally, untimely. See State v.Deutsch (Dec. 31, 1997), Montgomery App. No. 16413, unreported;State v. Jackson (Oct. 25, 1995), Montgomery App. No. 15024, unreported; Feher v. Motor Express, Inc. (1945), 45 Ohio Law Abs. 513. Further, under App.R. 12(A), an appellate court is not required to consider issues not argued in the briefs. Therefore, we decline to address this argument.
Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 _________________________ BROWN, J.
BOWMAN, P.J. and KENNEDY, J., concur.