STEPHAN'S MACHINE & TOOL, INC., APPELLEE, *v.*
D & H MACHINERY CONSULTANTS, INC., APPELLANT.

[Cite as Stephan's Machine & Tool v. D & H Machinery
Consultants (1979), 65 Ohio App. 2d 197.]

198

*Mr. James E. McCormick,* for appellee.

*Mr. Louis J. Hattner* and *Mr. Chris E. Steiner,* for appellant.

BROWN, J.   Defendant-appellant, D & H Machinery Consultants, Inc., seller of a four-inch Monti Horizontal Boring Mill machine, appeals from the final judgment of the Court of Common Pleas of Lucas County in a breach of contract action in which the court below awarded equitable relief to plaintiff-appellee, Stephan's Machine & Tool, Inc., ordering defendant to specifically perform its contract to deliver and install a new boring machine (machine No. 2) to plaintiff in order to replace the defective four-inch Monti Horizontal Boring Mill machine (machine No. 1), which was originally sold to plaintiff. In addition, defendant appeals from the award of a money judgment to plaintiff for $81,375. The money judgment represented a loss of profits by plaintiff of $55,000 and interest payments in the sum of $26,375 on a loan transaction to pay for the $96,000 purchase price of the original inoperable boring machine (machine No. 1). Defendant also appeals from the award of $8,200 to defendant on its counterclaim against plaintiff involving an account unrelated to the boring machine, defendant contending that it had a right to a judgment on its account in the sum of $11,814.72.

A temporary injunction hearing in the trial court occurred in April of 1978, resulting in a temporary injunction order to compel defendant to install machine No. 2 at plaintiff's premises. A final hearing before the trial court, without a jury, began on September 21, 1978, resulting in a final judgment, which was journalized on December 6, 1978.

The final judgment also included a finding that defendant was guilty of contempt of court in that by transporting the replacement boring machine (machine No. 2) to the International Machine Tool Show in August of 1978, defendant had violated the temporary injunction order issued on April 19, 1978, ordering defendant to deliver and install machine No. 2 at plaintiff's place of business. Defendant was fined $200 and ordered to pay $500 to plaintiff's counsel for prosecuting the

contempt proceedings. This contempt finding and sentence is also part of defendant's appeal.

On or about August 18, 1975, plaintiff and defendant executed a written contract by which plaintiff agreed to purchase and defendant agreed to sell to plaintiff one four-inch Monti Horizontal Boring Mill machine at a specific price. This contract was preceded by an oral commitment by defendant to plaintiff in February of 1975 that the boring machine (machine No. 1) would be delivered and installed in April of 1975. However, the boring machine was not delivered and installed in plaintiff's place of business until October of 1975.

Thereafter, numerous problems or malfunctions developed with machine No. 1. Defendant, through its skilled technicians, spent many hours and days making continual repairs and adjustments, striving to have an operable machine for plaintiff. Although defendant sought to prove abuse and misuse of machine No. 1 by plaintiff and its employees, the record supports a finding that the machine was innately defective and substantially inoperable from the time it arrived in Toledo in October of 1975. Accordingly, by a letter dated July 13, 1977, defendant agreed to replace machine No. 1, remove it from plaintiff's premises and install a new boring machine (machine No. 2), at no additional charge to plaintiff.

Thereafter, defendant refused to deliver machine No. 2—and still refuses to deliver the machine—until plaintiff paid defendant on an account, concerning equipment unrelated to the four-inch Monti Horizontal Boring Mill transaction, in the amount of $12,384.72. This amount was later set forth in defendant's counterclaim in this action. Plaintiff's partial defense to this counterclaim is that defendant's former vice-president, James Campey, while still acting for defendant in that capacity, made corrections on this account for plaintiff and that, through Campey, the parties agreed that plaintiff owed defendant only $8,200 on the account.

Besides equitable relief, plaintiff also sought damages in the amount of $104,000 for loss of profits and $26,375 for the interest payments on the loan from Toledo Trust Company which was obtained to purchase machine No. 1. As previously indicated, the trial court awarded plaintiff $55,000 for loss of profits and $26,375 for interest payments, a total damage award of $81,375.

Defendant's first assignment of error attacks the trial court's order overruling defendant's motion for findings of fact separate from conclusions of law. It is clear that under Civ. R. 52 a trial court, in a trial without a jury, has a mandatory duty, upon request of either party, to state in writing conclusions of fact separate from conclusions of law; and, violation of this duty constitutes reversible error. See *Cleveland Produce Co.* v. *Dennert* (1922), 104 Ohio St. 149; *Feller-Olmsted Co.* v. *J. Ritchie & Sons* (1963), 119 Ohio App. 148. However, in the case at bar the trial judge made extensive findings in a judgment entry filed on April 10, 1978, and journalized on June 1, 1978, granting temporary injunctive relief to plaintiff. The trial judge made extensive findings, again, after the final hearing in September of 1978 in a four-and-one-half-page decision which was filed on November 15, 1978, and which was made part of the final judgment entry that was journalized on December 6, 1978. Therefore, the trial judge substantially and sufficiently complied with Civ. R. 52. "An opinion or memorandum of decision [, as was filed here,] filed in the action prior to judgment entry and containing findings of fact and conclusions of law stated separately***[is] sufficient to satisfy the requirements of***" Civ. R. 52. Civ. R. 52. See *Drumm* v. *Blue Cross* (1974), 40 Ohio App. 2d 421, 426; *Life Savers Corp.* v. *Curtiss Candy Co.* (C.A. 7, 1950), 182 F. 2d 4. The first assignment of error is, therefore, not well taken.

Defendant's second and third assignments of error[1] are treated together. Defendant contends that the trial court erred in granting a permanent injunction directing defendant "to deliver and install the new machine No. 2" at plaintiff's premises and to remove the defective machine and that the court erred in not directing a verdict in favor of defendant.

---

[1] Assignments of Error Nos. 2 and 3 read as follows:

"Assignment of Error No. II.

"The trial court erred to the prejudice of appellant by granting appellee a permanent injunction directing appellant 'to deliver and install the new machine No. 2 at plaintiff's place of business and remove the defective machine No. 1 therefrom at no cost to plaintiff.'

"Assignment of Error No. III.

"The trial court erred to the prejudice of the appellant in overruling its motion for directed verdict made at the close of appellee's case and renewed at the conclusion of the appellant's case."

Defendant contends that plaintiff was not entitled to equitable relief in the form of a permanent injunction mandating defendant to specifically perform its contract to install machine No. 2 because plaintiff has an adequate remedy at law and because there is no evidence in the record that plaintiff will suffer "irreparable harm."

In determining the issue of plaintiff's right to specific performance of the contract, attention must be given to R. C. 1302.90(A), which provides as follows:

"Specific performance may be decreed where the goods are unique or in other proper circumstances."[2]

The testimony of James Campey, former vice-president of defendant, as well as the record in its entirety, establishes that the four-inch Monti Horizontal Boring Mill machine, which was ordered to be installed by defendant on plaintiff's premises, is a unique machine. The inoperable condition of machine No. 1, for which plaintiff borrowed $96,000 from Toledo Trust Company, placed an insurmountable financial strain on plaintiff, causing a default on plaintiff's note to the bank, followed by a judgment on the renewal note. The financial circumstances of plaintiff were such that it is folly to contend that plaintiff could have avoided his business losses by buying a comparable boring machine from a source other than the defendant. Plaintiff, therefore, did suffer irreparable harm and had no adequate remedy at law.

Defendant contends, further, that it was entitled to a directed verdict because plaintiff did not introduce any evidence that plaintiff made efforts to effect "cover" or that plaintiff's damages were contemplated by defendant at the time of contracting, both elements being necessary preconditions to plaintiff's recovery of consequential damages for breach of contract for non-delivery. This contention requires consideration of R. C. 1302.89, which provides, in part, as follows:

---

[2] The remainder of R. C. 1302.90 provides as follows:

"(B) The decree for specific performance may include such terms and conditions as to payment of the price, damages, or other relief as the court may deem just.

"(C) The buyer has a right of replevin for goods identified to the contract if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered."

"(B) Consequential damages resulting from the seller's breach include:

"(1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(2) injury to person or property proximately resulting from any breach of warranty."

This statute, in essence, requires the party wronged by a breach of contract resulting from non-delivery of equipment to minimize his losses by "cover," or otherwise. 16 Ohio Jurisprudence 2d Rev. 36, 37, 112 and 118, Damages, Sections 17, 18, 92 and 97. Failure of delivery of a machine supports a finding, by the trier of facts, in favor of the injured party awarding him damages for loss of property. *Champion Ice Mfg. & Cold Storage Co.* v. *Pennsylvania Iron Works Co.* (1903), 68 Ohio St. 229; *Wellman Engineering Co.* v. *Calderon Automation* (1964), 93 Ohio Law Abs. 549. Applying these standards to the case at bar, defendant argues that plaintiff should have acted as a broker to farm out customer orders designed for machine No. 1 to other boring mill operators. Plaintiff adequately explained how this would have caused loss of customers and business and, therefore, was not feasible.

Moreover, the record abundantly reveals that defendant, through its president (Mr. Donofrio), "at the time of contracting had reason to know" the "general or particular requirements and needs" of the plaintiff in purchasing machine No. 1. In addition, defendant's president was thoroughly familiar with this type of industry. Application of R. C. 1302.89(B) to the facts herein creates liability on the part of the defendant to the plaintiff for the consequential damages resulting from the defendant-seller's breach of contract.

Defendant further argues that the award to plaintiff of $55,000 for loss of profits is against the weight of the evidence. Defendant contends that the loss was not proven with reasonable certainty, primarily because plaintiff's evidence on this issue only represents bids submitted by plaintiff or solicitations for bids and does not represent binding orders or accepted contracts between plaintiff and its customers. Defendant reasons that such evidence is only speculative as to whether plaintiff would obtain the work

described in the bids. Plaintiff's president, Stephan Laczko, testified in detail, with reference to these bids, that the customers had verbally accepted the bids and that Laczko explained to each customer that he could not do the work described because the Monti Horizontal Boring Mill machine (machine No. 1) was inoperable. Plaintiff's president clearly established that his company would have obtained the work described in the bids, and the resulting profits represented by the bids, if machine No. 1 were operable. In *Kopper Glo Fuel* v. *Island Lake Coal Co.* (N.D. E.D. Tenn. 1977), 436 F. Supp. 91, cited by defendant, the court refused to award damages for loss of profits based on future contracts. The buyer, a coal dealer, asserted a claim against the seller for breach of contract for selling an allegedly inferior quality of coal to the buyer-dealer, allegedly causing the buyer's customers to cancel their contracts with the buyer. The buyer's claim was rejected because the buyer "had nothing more than a hope that***[its customers] would continue to purchase coal from it." *Id.*, at page 99. However, *Kopper Glo Fuel, supra,* is inapplicable herein. In the case at bar, plaintiff had a verbal acceptance of its bids and a consequent certainty, not just a hope, of obtaining the business sought by the bids; the work represented by the bids would have resulted in the profits previously explained.

Moreover, plaintiff's testimony and documentary evidence reveal lost profits exceeding $100,000. The trial judge awarded an amount for lost profits well within the range of that figure, *i.e.,* only $55,000.

Also, the award of $26,375 for interest on the loan at Toledo Trust Company to purchase machine No. 1 for $96,000 was supported by the record. The original loan, in October of 1975, for $100,000, bore interest at 12.5 percent per annum. Upon refinancing the loan with Toledo Trust Company, combining it with two smaller loans of the plaintiff, in September of 1976, the loan balance for machine No. 1, in excess of $93,000, bore interest at 10 percent per annum. The journal entry, which was filed on December 6, 1978, and which was based on the September 1978 trial, covered a period of time of more than three years from the date of origin of the loan in October of 1975. Even interest on a principal balance on a note, or renewal note, that was never greater than $93,000, at the

above interest rates for a period in excess of three years, would be greater than the $26,375 awarded to plaintiff for interest payments.

Defendant's fourth assignment of error attacks the amount awarded to defendant on its counterclaim, *i.e.,* $8,200; defendant contends that the correct award should have been $11,814.72. This contention is without merit. The record abundantly portrays that James Campey, as vice-president of the defendant, had authority to correct the account owed by plaintiff to defendant and that he did so by arriving at the correct figure of $8,200. This amount, at the time of correction, was agreeable to both parties, and James Campey so testified.

Defendant's fifth assignment of error is as follows:

"The trial court erred to the prejudice of appellant in its judgment against appellant for contempt of court and further by making an unreasonable and unsubstantiated award of attorney fees to appellee's attorney for work done."

This assignment of error is well taken. The trial court, in its temporary injunction order, ordered defendant "to deliver and install" machine No. 2 at plaintiff's place of business. First, defendant's act, in transporting machine No. 2 to Chicago, did not constitute a violation of the provisions of the trial court's injunctive order. Moreover, at the time of the Chicago exhibition of machine No. 2 there was in effect an order of the trial court suspending the enforcement of the injunction. Suspension of the injunction order, *ipso facto,* suspended defendant's duty to "deliver and install" machine No. 2. This period of suspension covered the entire time that machine No. 2 was away from Toledo. The suspension of the injunction order, as described, is the second reason that defendant was not guilty of contempt. See *Lynch* v. *Uhlenhopp* (1956), 248 Iowa 68, 78 N.W. 2d 491; 17 American Jurisprudence 2d 54, Contempt, Section 52.

Since defendant was not guilty of contempt of court, the fine of $200 imposed upon defendant and the award of $500 to plaintiff for attorney's fees, incident to the contempt proceedings, are invalid and must be vacated.

Defendant's sixth assignment of error relates to the admission in evidence of various exhibits and memoranda, regarding plaintiff's loss of profits and interest payments. All the documents challenged were material and relevant and,

therefore, were properly admitted. Further, the challenged exhibits were explained in great detail by testimony of the parties and witnesses without objection by counsel, for the most part. To put it another way, the lost profits and interest payments were clearly proven and established without the challenged exhibits being considered or admitted in evidence. Therefore, even if there was any error in admission of exhibits, the error was, necessarily, harmless. The sixth assignment of error is not well taken.

Defendant's seventh assignment of error is as follows:

"The trial court erred to the prejudice of appellant by not admitting into evidence proffered testimony regarding circumstances under which appellee's business was conducted."

This proffered testimony was designed to discredit plaintiff's president, Stephan Laczko, by showing plaintiff's loss of profits were related to reasons other than the non-use of machine No. 1 and non-delivery of machine No. 2. Even if such proffered testimony were relevant, it would not have changed the judgment concerning plaintiff's damages. Defendant's seventh assignment of error is not well taken.

The judgment of the Court of Common Pleas of Lucas County is affirmed as to the mandatory injunction ordering defendant to deliver and install machine No. 2; affirmed as to the judgment in favor of plaintiff in the sum of $81,375; and, is affirmed as to the judgment in favor of defendant on its counterclaim against plaintiff in the sum of $8,200. However, that portion of the judgment, finding defendant guilty of contempt of court, imposing a fine of $200 on defendant and awarding $500 to plaintiff for its attorney's fees, is reversed and vacated and final judgment is entered in favor of defendant on the contempt charges.

*Judgment accordingly.*

CONNORS and WILEY, JJ., concur.

WILEY, J., of the Sixth Appellate District, retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.