**RHODES, Appellant,**

v.

**RHODES INDUSTRIES, INC. et al., Appellees.**

[Cite as *Rhodes v. Rhodes Indus., Inc.* (1991), 71 Ohio App.3d 797.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58359.

Decided April 8, 1991.

798

*James R. Gallagher,* for appellant.

*Andrew Steven Dever,* for appellee.

FRANCIS E. SWEENEY, Judge:

Plaintiff-appellant, Dennis C. Rhodes, appeals from the judgment of the Cuyahoga County Court of Common Pleas, which rendered judgment for defendant-appellee, Rhodes Industries, Inc., and against appellant and awarded appellee fifty thousand dollars in damages against appellant on appellee's counterclaim.

Appellant filed a complaint against appellee Rhodes Industries, Inc. and defendants Douglas Albers, Michelle Albers, Daniel Margulies, and Diane Margulies, alleging breach of contract based upon a consulting agreement, and requested damages in the amount of forty-four thousand six hundred dollars.

Appellee and defendants Douglas and Michelle Albers filed an answer and counterclaim against appellant, which requested compensatory damages on the basis that appellant had breached the consulting agreement.

After a bench trial, the court granted defendants' motion to dismiss appellant's complaint as against Douglas and Michelle Albers and Daniel and Diane Margulies.

The court found for appellee Rhodes Industries, Inc. and against appellant on his complaint and awarded appellee fifty thousand dollars in damages against appellant on appellee's counterclaim.

Appellant timely appeals the decision of the trial court. For the reasons set forth below, we affirm in part and reverse in part, remanding the case for trial on the issue of damages.

The testimony at trial and the relevant exhibits introduced at trial establish the following pertinent facts.

In June 1985, defendants Douglas Albers and Daniel Margulies formed a corporation named Rhodes Industries, Inc. (appellee). On August 17, 1985, appellee purchased a business from appellant Dennis C. Rhodes known as Rhodes Cabinets and Dennis Rhodes Builders. The purchase agreement specified for the sale of the contents of a cabinet fabricating shop. The

purchase agreement further provided that appellant would continue to use the name Dennis Rhodes Builders.

At the time of sale, appellant became employed as a consultant to appellee by way of a consulting agreement by and between appellee and Dennis C. Rhodes. It is the consulting agreement upon which this action is based.

The consulting agreement required appellee to pay appellant an annual retainer of twenty-five thousand dollars for five years and twenty dollars per hour for all consulting time actually performed by appellant. The twenty-five thousand dollar retainer was to be paid even if appellant died or was unable to perform.

The consulting agreement required appellant to "provide consulting services to the Employer when reasonably requested to do so by the Employer and * * * work at such place or places as may be directed by the Employer." The agreement further provided, in pertinent part:

" * * * Consultant shall devote his best efforts to the business affairs of the Employer and shall not, during the term of this Agreement, be engaged in any other business activity pursued for gain, profit, or pecuniary advantage which shall directly impact on Employer's business or be in competition therewith."

The agreement also contained a covenant not to compete, "as a significant condition and term of his employment," restricting appellant from:

" * * * entering into competition with the Employer (which) shall relate to direct or indirect employment or engaging in any partnership, corporation, or other entity whatsoever which is in competition with the business of the Employer or any other activity which is intended to, or is likely to, result in any material diminution in the value of the Employer's business by reason of such activity tending to deprive the Employer of a portion of the market for the services and/or products of the Employer business as such market exists on the date hereof."

The covenant not to compete continued by noting:

"During said five (5) year period, Consultant, either alone or in conjunction with another or others, directly or indirectly, shall not hire, solicit, or attempt to hire any person or independent contractor who was an employee or engaged by Employer on or after the date of this Agreement, without first obtaining the consent of the Employer; and, furthermore, shall not solicit any customer or client of the Employer during said period.

"The Consultant acknowledges that any such competition in a manner prohibited by this Agreement, would cause grievous injury to the business and business prospects of the Employer. * * * "

The consulting agreement was signed by Douglas K. Albers, President of Rhodes Industries, Inc., Michelle L. Albers, Daniel E. Margulies, Diane E. Margulies, and Dennis C. Rhodes, Consultant. All signatures were witnessed by the parties' attorneys.

The testimony at trial of appellant establishes that at the time of sale, it was known to appellant that defendants were newcomers to the field of custom cabinet and finished carpentry work. Contrary thereto, appellant had much experience in the above-mentioned field. Furthermore, appellant, after the sale of the business to appellee, continued his general contracting/carpentry business known as Dennis Rhodes Builders.

Prior to the time of sale of Rhodes Industries, Inc., defendants were provided a list of the existing core clients of appellant's business. Defendants were aware that appellant had developed business relations with those men who were responsible for awarding subcontract work in the finished carpentry and cabinet business. These core clients were to become appellee's core clients.

Between August and December 1985, appellant did perform and was paid in accordance with the consulting agreement.

On December 15, 1985, Daniel and Diane Margulies sold their interest in Rhodes Industries, Inc. to Dr. Donald Albers for seventy thousand dollars.

In February 1986, Thomas Rhodes, appellant's son, quit his job at Rhodes Industries, Inc., and started his own business known as Thomas Rhodes Cabinets and Displays. Thereafter, Thomas Rhodes solicited clients of Rhodes Industries, Inc. by way of a letter dated February 2, 1986. Thomas Rhodes Cabinets and Displays was in direct competition with Rhodes Industries, Inc.

The testimony of Douglas Albers indicates his concern over the loss of various core clients, which he attributed to the solicitation of said clients by Thomas Rhodes. Therefore, Douglas Albers approached appellant, on a number of occasions, and requested him to contact certain core clients to dispel what Douglas believed to be false and misleading information communicated to these clients by Thomas Rhodes. However, appellant admitted that he did not contact any of these clients.

The testimony of appellant also establishes that he engaged in business relations with his son, Thomas Rhodes, a direct competitor of appellee. Appellant hauled several loads of cabinets to various job sites. Appellant also worked as a subcontractor with his son at a Peabody Card Shop in the spring of 1986. The Peabody's job was also bid on by appellee, the total value for the job being $16,947.

The evidence also establishes that in the spring and summer of 1986, appellant employed a number of appellee's former employees to construct a building and a house.

The evidence establishes that in May 1986, William Linton, a former employee of appellee, established his own cabinet shop known as Flying Chips. Furthermore, appellant assisted William Linton in purchasing equipment, accompanying him to job sites and providing him work.

It was also established that appellant constructed a new facility for Creative Kitchens, Inc., a direct competitor of appellee. Appellant was paid fourteen thousand dollars for his assistance to Creative Kitchens.

Douglas Albers testified that appellant's activities in employing appellee's present and former employees contradicted the authority of the company.

Douglas Albers further testified that calculations were performed for the years 1985, 1986, 1987 and 1988 concerning business with a number of core clients of Rhodes Industries. Those calculations revealed that these core clients were now doing business with Thomas Rhodes. Thomas Rhodes provided his business records with core clients for the years 1986, 1987 and 1988.

Concerning business done with various core clients, it was Douglas Albers' testimony that appellee lost numerous clients during the first two months of 1986. It was his testimony that Thomas Rhodes began doing business with these clients and, as a result, appellee lost substantial business. He further testified that "on average," appellee lost two hundred thousand dollars per year, with a probable twenty-five percent profit margin.

Douglas Albers further testified that he formerly notified appellant that he was in breach of the consulting agreement on May 11, 1987. Susan Albers testified as to the financial records of Rhodes Industries, Inc. She testified that appellant received $29,013.73 in payment under the consulting agreement. The last payment being made on May 6, 1987.

Testimony was also elicited from Douglas Albers that he had to raise prices. There was also extensive testimony by Douglas Albers, appellant and Thomas Rhodes concerning a letter sent to Kopf Construction threatening a lawsuit. The evidence shows that Kopf did no more business with Rhodes Industries, Inc. after receiving the letter.

Appellant testified that he had received $29,013.73 in payment under the consulting agreement. Appellant further testified that from the time period of August 1985 through December 7, 1987, the amount owed to him under the consulting agreement was $39,719.34.

Based upon the above evidence, the court found for appellee and against appellant on his complaint and awarded appellee fifty thousand dollars in damages against appellant on appellee's counterclaim. Appellant timely appeals, raising six assignments of error for our review.

The assignments of error are:

## ASSIGNMENT OF ERROR I

"The trial court erred when it granted defendant/appellee's motion in limine to prohibit any parol testimony with regard to the reasons for the individual signatures of Daniel and Diane Margulies and Michelle Albers on the consulting agreement."

## ASSIGNMENT OF ERROR II

"The trial court erred when it granted defendant/appellee's motion in limine to prohibit any parol testimony as to the intent of the parties when they entered into the consulting agreement."

Appellant argues that the trial court erred in granting defendant-appellee's motion *in limine* prohibiting parol testimony concerning the reasons for the individual signatures on the consulting agreement and in prohibiting parol testimony concerning the intent of the parties when they entered the consulting agreement. Specifically, appellant argues that he was improperly prohibited from introducing testimony that Daniel and Diane Margulies and Michelle Albers intended to be personally bound by the terms of the consulting agreement. Appellant further argues that he was improperly prohibited from introducing testimony that the consulting agreement was in actuality a disguised sale and that the consulting agreement was a means to pay appellant one hundred twenty-five thousand dollars over five years in addition to the two hundred thousand dollar purchase price. These arguments are without merit.

Generally, parol evidence is inadmissible to contradict the terms of an unambiguous contract. *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265; *Fodor v. First Natl. Supermarkets* (July 5, 1990), Cuyahoga App. No. 58587, unreported, at 7, 1990 WL 93210, affirmed (1992), 63 Ohio St.3d 489, 589 N.E.2d 17. Parol evidence which is not contradictory to the terms of a contract is admissible "to illuminate the circumstances under which the contract was executed, and to explain the intent of the parties as reflected in the contract." *Fodor, supra,* at 10, citing *Third Natl. Bank of Cincinnati v. Laidlaw* (1912), 86 Ohio St. 91, 98 N.E. 1015.

The salutary effects of barring evidence of prior negotiations which vary or contradict the express language of a written agreement is recognized in *AmeriTrust Co. v. Murray* (1984), 20 Ohio App.3d 333, 20 OBR 436, 486 N.E.2d 180. There, the court stated:

" * * * the parol evidence rule precludes the introduction of evidence of conversations or declarations which occur prior to or contemporaneous with a written contract and which attempt to vary or contradict terms contained in the writing * * *." *AmeriTrust, supra,* at 335, 20 OBR at 438, 486 N.E.2d at 183.

In the present case, we find the consulting agreement to be clear and unequivocal. No ambiguity exists therein. Thus, parol evidence was inadmissible.

█ The consulting agreement clearly states that it is entered into by and between Rhodes Industries, Inc. (employer) and appellant Dennis C. Rhodes (consultant). Furthermore, a review of the entire agreement reveals that all recitals refer to the duties and obligations by and between the "Employer," Rhodes Industries, Inc., and the "Consultant," Dennis C. Rhodes. Nowhere can it be found within the agreement that any duties or obligations exist concerning any of the individuals who appellant asserts to be individually bound, except appellant himself as the "Consultant."

Thus, the trial court did not err in prohibiting parol testimony concerning the reasons for the individual signatures of Daniel and Diane Margulies and Michelle Albers. Parol testimony concerning these individuals' intent to be bound would contradict the express terms of the consulting agreement providing that the agreement was entered into by and between appellee, Rhodes Industries, Inc., and the appellant, Dennis C. Rhodes.

In any event, assuming *arguendo* that appellant was improperly prohibited from introducing parol testimony concerning the intent of the individuals who signed the agreement, such error was harmless. Appellee's defense at trial concerned a failure of consideration by appellant's own acts and that appellant, himself, was in breach of the agreement. Appellant has in no way shown how evidence relating to the individual signatures affects these claims or defenses.

█ As to Assignment of Error II, we find that the consulting agreement is also clear and unequivocal with respect to the intent of the parties in entering such agreement. The recitals clearly indicate that the "Employer desires to employ Consultant to devote time to the business of the Employer" and the "Consultant desires to so consult * * *."

Thus, the trial court did not err in prohibiting parol testimony concerning the intent of parties in entering into said agreement. The trial court correctly concluded that testimony regarding an alleged disguised sale would alter or vary the express language of the consulting agreement, specifically concerning the intent of the parties.

Therefore, Assignments of Error I and II are overruled.

### ASSIGNMENT OF ERROR III

"The trial court erred when despite its own ruling prohibiting all parol evidence, allowed defendant/appellee to continually explain [its] intent of 'understanding' of the terms of the consulting agreement [*sic*]."

Apparently, appellant argues that the appellee was impermissibly allowed to introduce parol evidence to explain the term "furniture business" and to explain the term "consultant." This argument is without merit.

Appellant alleges that the trial court impermissibly allowed Douglas Albers to explain the term "furniture business." However, the record reveals that appellee's counsel merely inquired into the type of work in which appellee engaged. No inquiry was made concerning Douglas Albers' explanation of "furniture business."

Appellant also alleges that the trial court impermissibly allowed Douglas Albers to explain the term "consultant" to include salesman, goodwill ambassador, cheerleader and manager. However, we must point out that it was appellant who elicited this testimony from Douglas Albers on cross-examination. Therefore, appellant's assignment of error objecting to the admission of parol testimony concerning Douglas Albers' explanation of the term "consultant" is an invited error for which appellant cannot now complain. Under the "invited error" doctrine, "[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 313, 31 OBR 587, 590, 511 N.E.2d 106, 108. Furthermore, under the "invited error" doctrine, appellant cannot be heard to complain if appellee elicites similar testimony. *Marek v. Christian* (July 28, 1988), Cuyahoga App. No. 55049, unreported, 1988 WL 86952.

Therefore, for the reasons stated above, we find appellant's Assignment of Error III without merit.

Assignment of Error III is overruled.

## ASSIGNMENT OF ERROR IV

"The trial court erred in finding that the defendant/appellee [was] excused from performance of [its] obligations due to failure of consideration from plaintiff/appellant."

## ASSIGNMENT OF ERROR V

"The trial court erred in ruling that plaintiff's conduct constituted material and significant breaches of the contract."

Appellant contends that the ruling of the trial court was against the manifest weight of the evidence in finding that appellee was excused from performance of its obligations due to a failure of consideration from appellant, and that appellant's conduct constituted material and significant breaches of the consulting agreement. This argument is without merit.

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. We will make every reasonable presumption in favor of the trial court's judgments. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Furthermore, the weight to be given the evidence and witness credibility are primarily for the factfinder. *Shore Shirley & Co. v. Kelley* (1988), 40 Ohio App.3d 10, 531 N.E.2d 333.

Failure of consideration exists when a promise has been made to support a contract, but that promise has not been performed. *Franklin v. Lick* (Apr. 19, 1979), Cuyahoga App. No. 37770, unreported. Where a failure of consideration exists, the other party is thereby excused from further performance. *Action Sanitation, Inc. v. Keg & Quarter, Inc.* (Oct. 3, 1985), Cuyahoga App. No. 49463, unreported, 1985 WL 8082.

Upon a material breach of a contract by one party, the other contracting party may elect to rescind the contract or sue for damages for the breach thereof. *Dickson v. Wolin* (Summit App.1934), 18 Ohio Law Abs. 107; *Ohio Bell Tel. Co. v. Rizzo* (Dec. 6, 1984), Cuyahoga App. No. 48220, unreported, at 3, 1984 WL 6337.

On the issue of materiality, this court has adopted the Restatement of Contracts 2d approach. *Ohio Bell Tel. Co., supra,* at 3. The Restatement of the Law 2d, Contracts (1981), Section 241, states:

"In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

"(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

"(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

"(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

"(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

"(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

Based upon a review of the evidence, we find that competent, credible evidence exists that there was a failure of consideration by appellant which excused appellee from further performance and a material breach of contract by appellant.

The testimony of appellant establishes that he failed to contact clients when so requested to dispel potentially false and misleading statements against appellee made by his son; that he engaged in business relations with his son, a direct competitor of appellee, namely by hauling cabinets to various job sites; that he hired appellee's former employees against the wishes of Douglas Albers; that he accompanied a former employee and a competitor of appellee to a job site; and that he constructed a new facility for one of appellee's direct competitors.

Therefore, we find that the verdict was not against the manifest weight of the evidence.

Assignments of Error IV and V are overruled.

## ASSIGNMENT OF ERROR VI

"The trial court erred in ruling that defendant/appellee [was] damaged in the amount of $50,000.00 absent any evidence relative to the amount of damages suffered by defendant/appellee."

Appellant disputes the trial court's calculation of damages, contending that the award of fifty thousand dollars to appellee is unsubstantiated by any evidence and is against the manifest weight of the evidence. This argument is with merit.

As a general rule, an injured party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty, and generally, courts have required greater certainty in

the proof of damages for breach of contract than in tort. *Kinetico, Inc. v. Independent Ohio Nail Co.* (1984), 19 Ohio App.3d 26, 19 OBR 92, 482 N.E.2d 1345, citing Restatement of the Law 2d, Contracts (1981) 144, Section 352.

Damages include the compensation a non-breaching party would have received if the contract had been performed, less the value received from release of further performance. *Allen v. Amusement Co.* (1949), 151 Ohio St. 522, 39 O.O. 330, 86 N.E.2d 782; *Schulke Radio v. Midwestern Broadcasting* (1983), 6 Ohio St.3d 436, 6 OBR 480, 453 N.E.2d 683 (concurring opinion, 6 Ohio St.3d at 441, 6 OBR at 484, 453 N.E.2d at 687). Furthermore, a defendant who is sued for breach of contract may be liable to a plaintiff for lost profits. *Kinetico, supra,* at 30, 19 OBR at 95, 482 N.E.2d at 1350; *Stephan's Machine & Tool v. D & H Machinery Consultants* (1979), 65 Ohio App.2d 197, 19 O.O.3d 155, 417 N.E.2d 579. In order for a plaintiff to recover lost profits in a breach of contract action, the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty. *Gahanna v. Eastgate Properties, Inc.* (1988), 36 Ohio St.3d 65, 521 N.E.2d 814. There must be more than a conclusory statement as to the amount of lost profits. *Kinetico, supra,* at 30–31, 19 OBR at 95–97, 482 N.E.2d at 1350–1351. An explanation of how that sum was determined is required. Lost profits must be substantiated by calculations based on facts available or in evidence, otherwise they are speculative and uncertain. *Id.*

We also note that, within the confines of these general rules, a trial court enjoys a certain degree of flexibility in structuring damage awards in a manner most appropriate to the case before it. *Angerman v. Campara* (Feb. 19, 1987), Cuyahoga App. No. 51703, unreported, at 7, 1987 WL 6836.

In the present case, the only evidence presented on the issue of damages by appellee was its sales with various "core clients" between 1985 and 1988. In most cases, appellee showed high sales for the year 1985 and little to no sales for the following years, with sales dropping off significantly in the early part of February 1986. It is noteworthy that this is when Thomas Rhodes entered into competition with appellee. Testimony also indicates that appellee had to raise its prices during this time period. Finally, Douglas Albers attributes appellee's lost sales to Thomas Rhodes' receiving the business of appellee's former core clients. Douglas Albers testified that on average, lost sales amounted to two hundred thousand dollars a year with a probable twenty-five percent profit margin. However, the only evidence concerns sales for the years 1985 through 1988, yet there is no evidence with respect to overhead costs or a breakdown of expenses, parts, labor, etc. Therefore, Douglas Albers' testimony concerning a probable twenty-five percent profit margin is speculative and uncertain. It is not substantiated by

calculations based on facts available or in evidence. Furthermore, it is unclear from the evidence whether appellee would have continued business with various core clients considering its price increases, the fact that Thomas Rhodes entered the market as a competitor, and the testimony that Kopf Construction refused to do business with appellee after receiving appellee's letter threatening a lawsuit.

Therefore, we find that appellee has not established its damages by evidence with reasonable certainty.

Assignment of Error VI is sustained.

This action is reversed and remanded for a new trial solely on the issue of damages.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

ANN MCMANAMON, and SPELLACY, JJ., concur.