[Cite as *LeVangie v. Raleigh*, 2019-Ohio-810.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| MICHAEL E. LEVANGIE, MANAGING MEMBER | : | |
| | : | |
| | : | Appellate Case No. 27946 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2016-CV-6116 |
| v. | : | |
| | : | (Civil Appeal from |
| LINDA K. RALEIGH, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of March, 2019.

. . . . . . . . . . .

JOHN E. SHARTS, Atty. Reg. No. 0006905, 5 Fairway Drive, Springboro, Ohio 45066
 Attorney for Plaintiff-Appellee

THOMAS W. KENDO, JR., Atty. Reg. No. 0058548 and GABRIELLE R. NEAL, Atty. Reg.
No. 0092770, 7925 Paragon Road, Centerville, Ohio 45459
 Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant Linda Raleigh appeals from a judgment of the Montgomery County Court of Common Pleas awarding damages to plaintiff-appellee Michael LeVangie. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## I.      Facts and Course of the Proceedings

**{¶ 2}** LeVangie is a general contractor and managing member of LeVangie Construction, LLC. Linda Raleigh is the owner of a duplex housing unit located on Eby Road in Germantown. In February 2014, a fire destroyed one of the duplex units and caused serious damage to the other unit. Raleigh carried a policy of insurance on the structure, and the insurance company gave her $177,897.39 to rebuild the structure.

**{¶ 3}** On November 14, 2014, Raleigh and LeVangie executed a contract to repair and rebuild the duplex. The contract, which consisted of a handwritten page signed by Raleigh and LeVangie, provided:

> It is agreed to perform and complete all repairs required to complete insurance all repairs on fire job at 10436 Eby Rd. and 10440. All materials and labor will be supplied and installed according to codes compliance. A reliese [sic] of lein [sic] will be furnished upon completion and final payment and duly notarized. Total $177,647.34.[1]

---

[1] LeVangie introduced into evidence another handwritten page that he claimed was part of the contract agreed to by Raleigh. The page was entitled "Scope of Work," and set forth descriptions of the work to be performed. Raleigh denied seeing this page. The page was not signed by Raleigh and was on a different letterhead than the other page of the contract. It is clear that the trial court did not consider this page to be part of the

**{¶ 4}** After the contract was signed, LeVangie began working to remove the burned debris from the site. On December 9, 2014, LeVangie applied for a damage assessment building permit and an electrical permit. Both permits were issued, and a damage assessment was conducted by the Montgomery County Building Department on December 10, 2014. That same day, the inspector issued a report which noted that LeVangie would need to obtain electrical, mechanical, gas piping, plumbing and building permits. The report also stated that LeVangie was required to submit construction drawings in order to obtain a building permit.

**{¶ 5}** LeVangie began construction without obtaining a building permit. On January 8, 2015, Raleigh disbursed approximately $52,520 to LeVangie.[2] In May or June 2015, LeVangie asked Raleigh for another disbursement of funds, but she did not make any further disbursements.[3]

**{¶ 6}** LeVangie filed an application for a building permit on August 7, 2015. LeVangie stopped work on August 15 because of Raleigh's failure to make a further monetary disbursement and, additionally, because a building permit had not been issued. On September 8, 2015, the Montgomery County Building Regulations Division issued a letter to LeVangie indicating six issues that needed to be addressed prior to issuance of a building permit. The letter further indicated that review of the permit was suspended

contract.

[2] From that disbursement, LeVangie issued a check to Raleigh in the sum of $10,000 in exchange for which Raleigh agreed to perform upkeep, such as mowing, of the premises.

[3] According to Raleigh, she asked LeVangie to submit receipts for the work and materials prior to getting an additional disbursement. She testified that she never received the requested documentation.

pending the submission of further information.

{¶ 7} On November 13, 2015, Raleigh sent a letter to LeVangie terminating his services. Raleigh's son and ex-husband hired an architect to draw plans for the project. They then applied for a building permit which was issued on December 8, 2015. The project was completed by Raleigh's son and ex-husband. On December 17, 2015, LeVangie filed a mechanic's lien against the property.

{¶ 8} LeVangie filed a complaint for breach of contract and marshalling of liens on December 2, 2016. Raleigh filed an answer and a counterclaim. In her counterclaim, she asserted causes of action for breach of contract, negligence, unjust enrichment, slander of title and fraud.

{¶ 9} A trial was conducted in October 2017, after which the trial court awarded LeVangie $34,997.64. Raleigh filed a request for findings of fact and conclusions of law, which were rendered on February 7, 2018. The trial court found that the parties had entered into an express contract and that LeVangie had materially breached the contract and, thus, was not entitled to recover under the contract. Specifically, the trial court found that LeVangie failed to construct the house in a workmanlike manner according to applicable building codes and that he began construction without obtaining a permit. The trial court further found that the unrebutted evidence demonstrated that LeVangie's work had significant defects that had to be remedied by Raleigh's ex-husband and son.

{¶ 10} However, the trial court went on to conclude that it believed it was "appropriate under these circumstances to award [LeVangie] an amount for unjust enrichment or quantum meruit. Since [LeVangie] cannot recover under the contract because of his substantial breaches, he has, however, conferred a substantial benefit

upon [Raleigh] for which he should be compensated."[4]   Dkt. # 41, p. 3.   The trial court found that LeVangie had expended approximately $88,497 in labor and materials, and thus, he should receive the difference between that amount and the $53,520 paid to him by Raleigh, or $34,977.

{¶ 11} With respect to Raleigh's counterclaims, the trial court found that Raleigh had not proven her claims for breach of contract, negligence, unjust enrichment, slander of title, or fraud.   With respect to the breach of contract specifically, the court's conclusion was based on the evidence that, although LeVangie had breached the contract, Raleigh had not proven any damages.

{¶ 12} On February 20, 2018, the trial court entered a "Judgment Entry and Decree of Foreclosure," which stated that the property would be foreclosed if Raleigh did not pay the amount owed to LeVangie within 5 days.

{¶ 13} Raleigh appeals.

## II.     Unjust Enrichment

{¶ 14} Raleigh's first assignment of error states as follows:

THE TRIAL COURT ERRED IN AWARDING PLAINTIFF DAMAGES UNDER A THEORY OF UNJUST ENRICHMENT.

{¶ 15} Raleigh contends that a party cannot recover damages under a theory of unjust enrichment for services that were provided for by an express contract.   LeVangie counters by arguing that it is inequitable for Raleigh to argue that she has not been

---

[4] We note that during closing arguments, the trial court stated that recovery under the theory of quantum meruit is not allowed when the parties have entered into an express contract.   Tr. p. 541-542.

unjustly enriched.

{¶ 16} In *Caras v. Green & Green*, 2d Dist. Montgomery No. 14943, 1996 WL 407861 (June 28, 1996), this court stated:

A quasi-contract is a contract implied in law.  *Hummel v. Hummel*, 133 Ohio St. 520, 525, 14 N.E.2d 923 (1938).  Quasi-contracts are to be distinguished from express contracts and contracts implied in fact.

There are three classes of simple contracts; express, implied in fact, and implied in law.  Keener on Quasi Contracts (1893), 3.  In express contracts the assent to its terms is actually expressed in offer and acceptance.  In contracts implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding.  In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relation springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual.

*Id.*; see also *Rice v. Wheeling Dollar Savings & Trust Co.*, 155 Ohio St. 391, 99 N.E.2d 301 (1951); 1 Williston on Contracts (4th Ed.1990), Sections 1:5

and 1:6.

"Quasi contracts developed from the desire of the law to bring about justice without any reference to the intention of the parties, and sometimes contrary to their intention. The principle upon which they are founded is prevention of unjust enrichment, and the remedy provided is by an action as though it were upon a contract." *Williams v. Goodyear Aircraft Corp.*, 84 Ohio App. 113, 117; *see also Hummel v. Hummel*, supra, at 527-528; *Rice v. Wheeling Dollar Savings & Trust Co.*, *supra*, at 396.

A quasi-contract "is a legal fiction that does not rest upon the intention of the parties, but rather on equitable principles in order to provide a remedy. The two remedies most often associated with quasi-contracts are restitution and quantum meruit. Each of these remedies presupposes some type of *unjust enrichment* of the opposing party." *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged* (1984), 15 Ohio St.3d 44, 46 (emphasis in the original).

*Quantum meruit* means "as much as deserved." *Sonkin & Melena Co., L.P.A. v. Zaransky* (1992), 83 Ohio App.3d 169, 175. "[Q]*uantum meruit* is a doctrine derived from the natural law of equity, the basic concept of which is that no one should be unjustly enriched who benefits from the services of another. In order to prevent such an unjust enrichment, the law implied a promise to pay a reasonable amount for the services rendered . . ., in the absence of a specific contract." *Id.*

The elements of an action in quasi-contract on a claim of unjust

enrichment are a benefit conferred, knowledge of the benefit by the receiving party, and a retention of the benefit under circumstances which would make it unjust to do so without payment. *Advanced Marketing Services, Inc. v. Dayton Data Processing, Inc.* (March 6, 1992), Montgomery App. No. 12607, unreported, at * 4 (March 6, 1992); *see also Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183.

From the foregoing, it is apparent that the concepts of quasi-contract, unjust enrichment and quantum meruit are interrelated. A claim for *unjust enrichment* arises when one person has unfairly benefited from the services of another. In that event, courts have adopted a legal fiction, *quasi-contract*, to provide a remedy allowing the aggrieved party to seek recovery for as much as he deserves. That remedy is a claim for *quantum meruit* relief.

* * *

"It is clearly the law in Ohio that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact. The mere fact that issues exist as to the creation of the contract or the construction of its terms does not alter this rule." *Ryan v. Rival Manufacturing Company* (December 16, 1981), Hamilton App. No. C-810032, unreported, at 1. As we have stated, "... the remedy of unjust enrichment is not available where there is an express contract covering the same subject ... It is well-established that 'the theory of quasi-contract or unjust enrichment is not

available when an express contract will afford the complainant the same recovery.' " *Joseph Oldsmobile/Nissan, Inc. v. Tom Harrigan Oldsmobile, Inc.* (May 10, 1995), Montgomery App. No. 14788, unreported, at 16 (Citations omitted). * * *

*Caras* at * 2 - 4.

{¶ 17} With these principles in mind, we first note that LeVangie did not make any claim for unjust enrichment or the remedy of quantum meruit at any time during the proceedings below. Further, the trial court found, and the facts demonstrate, that the parties executed an express contract. Because LeVangie's rights are contractual, he has no right to the remedy of quantum meruit in order to effect a recovery for unjust enrichment. Therefore, we conclude that the trial court erred by awarding damages to LeVangie under the theory of unjust enrichment.

{¶ 18} Accordingly, the first assignment of error is sustained.

### III. Second Assignment of Error is Moot

{¶ 19} Raleigh's second assignment of error states:

THE TRIAL COURT ERRED IN CONCLUDING THAT DEFENDANT RECEIVED A BENEFIT FROM PLAINTIFF IN THE AMOUNT OF PLAINTIFF'S MONETARY OUTLAYS.

{¶ 20} Raleigh contends that the trial court erred in its determination of the amount owed to LeVangie. We conclude that this assignment of error has been rendered moot by our resolution of the first assignment of error.

{¶ 21} Accordingly, the second assignment of error is overruled as moot.

## IV. Breach of Contract Counterclaim

{¶ 22} The third assignment of error asserted by Raleigh states:

THE TRIAL COURT ERRED IN FINDING FOR PLAINTIFF ON RALEIGH'S

COUNTERCLAIM FOR BREACH OF CONTRACT.

{¶ 23} Raleigh contends that the trial court erred by denying her claim for damages for breach of contract when it specifically found that LeVangie had breached the contract. She contends that the evidence in the record demonstrates that she was entitled to recover the amount of $7,207.42, which she claims constituted an overpayment she made to LeVangie.

{¶ 24} To establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) the failure to perform by either party; and (3) damages or loss resulting from the breach. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41. "As a general rule, an injured party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty, and generally, courts have required greater certainty in the proof of damages for breach of contract than in tort." *Rhodes v. Rhodes Indus., Inc.*, 71 Ohio App.3d 797, 808-809, 595 N.E.2d 441 (8th Dist.1991), citing *Kinetico, Inc. v. Indep. Ohio Nail Co.*, 19 Ohio App.3d 26, 482 N.E.2d 1345 (1984), citing Restatement of the Law 2d, Contracts (1981) 144, Section 352.

{¶ 25} LeVangie did not appeal the trial court's findings that he materially breached an express contract or the fact that the trial court did not find Raleigh in breach of contract. Thus, we are constrained to the conclusion that all of the elements of Raleigh's claim for

breach of contract, except damages, have been properly established.

{¶ 26} With regard to the damages, Raleigh notes that the evidence demonstrated that LeVangie had costs of $88,497. She further notes that there was evidence that her ex-husband expended approximately $42,184, which represented the cost to fix the construction mistakes made by LeVangie. Thus, she contends that the value of LeVangie's work was $46,313 ($88,497 minus $42,184). Because she paid him the sum of $53,520, Raleigh claims LeVangie was overpaid the sum of $7,207, which she was entitled to recover.

{¶ 27} However, we agree with the trial court that Raleigh failed to prove that she sustained any damages by reason of LeVangie's breach. The record demonstrates that the insurance company paid Raleigh over $177,000 to repair and rebuild the duplex. Of that amount, Raleigh paid LeVangie approximately $53,520. Raleigh testified that she paid her ex-husband approximately $11,000 from the insurance proceeds.[5] There was no evidence that she otherwise paid her son or ex-husband. She also testified that she incurred additional expenses in the sum of $1,400. Otherwise, there was no competent evidence to explain how the remainder of the insurance proceeds were spent, or even whether they actually were spent. Because Raleigh did not demonstrate that she expended any funds other than those provided by the insurance company, she has failed to prove that she suffered any monetary loss as a result of LeVangie's breach.

{¶ 28} Based upon this record, we agree that Raleigh has failed to demonstrate any damages flowing from LeVangie's breach of the contract. Therefore, we conclude

---

[5] Raleigh did not present any documentary evidence to support this claim, and her ex-husband did not testify that he received any monies from her.

that the trial court did not err in denying this claim.

{¶ 29} The third assignment of error is overruled.

## V. Slander of Title

{¶ 30} Raleigh states the following for her fourth assignment of error:

THE TRIAL COURT ERRED IN FINDING FOR PLAINTIFF ON RALEIGH'S COUNTERCLAIM FOR SLANDER OF TITLE.

{¶ 31} Raleigh contends that the trial court should have ruled in her favor on her claim for slander of title. In support, she argues that LeVangie failed to timely file his mechanic's lien on her property and that the lien was not valid because LeVangie breached the construction contract.

{¶ 32} "Slander of title to real estate is a tort action against one who falsely and maliciously defames title to property and causes some special pecuniary damages or loss." *Hahn's Elec. Co. v. Cochran*, 10th Dist. Franklin Nos. 01AP-1391, 01AP-1394, 2002-Ohio-5009, ¶ 24, citing *Green v. Lemarr*, 139 Ohio App.3d 414, 430, 744 N.E.2d 212 (2d Dist.2000). "Generally, slander of title to real estate involves the wrongful recording of an unfounded claim, such as a mechanic's lien, to the property of another." *Id.*, citing *Green* at 433. "Thus, the gravamen of a claim of slander of title to real estate is protection of economic interests in property * * *." *Id.* at ¶ 25, citing Restatement of the Law 2d, Torts (1977), 340-341, Section 623A, Comment g and 343 Section 624, Comment a. In order to prevail on a slander of title claim, the plaintiff must prove "(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless

disregard of its falsity; and (4) the statement caused actual or special damages." (Citation omitted.) *Green* at 430-431. "The filing of a mechanic's lien satisfies the publication element." *Prater v. Dashkovsky*, 10th Dist. Franklin No. 07AP-389, 2007-Ohio-6785, ¶ 13, citing W. Prosser, The Law of Torts § 122 at 939 (3 Ed.1964).

**{¶ 33}** Again, the trial court found that Raleigh failed to prove her counterclaims, including her claim for slander of title, because she failed to prove that she incurred any damages. We agree. There is no evidence that Raleigh attempted, or even intended, to sell or mortgage the property after the lien was filed. Further, she presented no evidence of any damages incurred because of the lien. Thus, we agree that Raleigh has failed to establish the elements of slander of title.[6]

**{¶ 34}** The fourth assignment of error is overruled.

### VI. Fifth Assignment of Error is Moot

**{¶ 35}** The fifth assignment of error states:

THE TRIAL COURT ERRED IN ENTERING JUDGMENT THAT DIRECTED SALE OF PROPERTY WITH [SIC] COMPLIANCE WITH R.C. 2329.191.

**{¶ 36}** Raleigh contends that, because LeVangie failed to comply with the statutory requirements for a judicial sale, the trial court erred by ordering the sale. Given our disposition of the first assignment of error, and our finding that Raleigh is entitled to

---

[6] However, given our disposition of Raleigh's first assignment of error, we note that LeVangie now has no right to a mechanic's lien on Raleigh's property. Thus, Raleigh is entitled to an order of the trial court to quiet title and have the lien removed as an encumbrance upon her property.

removal of the mechanic's lien against her property, this assignment of error has been rendered moot.

{¶ 37} Accordingly, the fifth assignment of error is overruled as moot.

## VII.    Conclusion

{¶ 38} Raleigh's first assignment of error is sustained, and her other assignments are overruled.   The judgment of the trial court is reversed insofar as it awarded damages to LeVangie, and it is affirmed with respect to Raleigh's counterclaims.   The matter is remanded to the trial court with instructions to enter a judgment, including a judgment to quiet title, consistent with this opinion.

. . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

John E. Sharts
Thomas W. Kendo, Jr.
Gabrielle R. Neal
Jeffrey Helms
Michele Phipps
Hon. Dale A. Crawford, Visiting Judge